JUSTICE KOONTZ,
with whom JUSTICE HASSELL joins, dissenting.
I agree with the view expressed in detail in Justice Hassell’s dissent in this case. For the reasons expressed therein and for the following reasons, I would also commute Daryl Renard Atkins’ death sentence to imprisonment for life without the possibility of parole. Code §§ 17.1-313 and 53.1-165.1.
Justice Hassell correctly observes that “[t]his Court has never approved the imposition of the death penalty upon a defendant who is mentally retarded and has an IQ as low as 59.” In footnote 9, the majority refers to Mackall v. Commonwealth, 236 Va. 240, 372 S.E.2d 759 (1988), to note that this Court has upheld, however, a sentence of death for a defendant with an IQ of 64 who was convicted of capital murder committed during a robbery. In another part of its opinion, the majority further correctly notes that “Dr. Nelson also acknowledged that Atkins might have scored two or three points higher if he had not been mildly depressed when Dr. Nelson administered the [IQ] test.” In doing so, apparently the majority suggests that there is no significant distinction between Atkins’ full scale IQ and that of Mackall. In my view, our statutory mandate under Code § 17.1-313 to determine “[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases” does not, and should not, lend itself to mathematical calculations and comparisons of specific degrees of mental retardation of defendants sentenced to death. Unlike the circumstances existing when Mackall was decided, however, the legislature, with the enactment of Code § 53.1-165.1, has effectively provided that a death sentence commuted to a life sentence shall be a life sentence without the possibility of parole. That change in the law is a valid consideration in the determination of whether a particular death sentence is excessive.
*397 Moreover, it is indefensible to conclude that individuals who are mentally retarded are not to some degree less culpable for their criminal acts. By definition, such individuals have substantial limitations not shared by the general population. A moral and civilized society diminishes itself if its system of justice does not afford recognition and consideration of those limitations in a meaningful way. Such must certainly be the case when our system of justice demands, as it does, that even the mentally retarded be held responsible for criminal acts for which the legislature has determined to be properly subject to a death sentence or a sentence of life without the possibility of parole. The choice is clear and limited. In my view, the execution of a mentally retarded individual rather than the imposition of a sentence of life without the possibility of parole is excessive. I would not permit such a result in Atkins’ case even though his crime was vile and his guilt undeniable. For these reasons, I respectfully dissent.